UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DARCY G. ARNOLD**, *et al.*,

      **Plaintiffs**,

                      Civil Action 2:20-cv-1804
                      Chief Judge Algenon L. Marbley
   v.                    Magistrate Judge Chelsey M. Vascura

**PNC BANK N.A.**, *et al.*,

      **Defendants**.

## REPORT AND RECOMMENDATION

This matter is before the undersigned for a Report and Recommendation on Plaintiffs' Motion to Remand (ECF No. 18), Defendant PNC Bank's f/k/a/ National City Bank ("PNC") Memorandum in Opposition to Plaintiffs' Motion to Remand and Motion to Deny Joinder of Defendant Kim Mason (ECF No. 24), and Plaintiffs' Reply in Further Support of their Motion to Remand and Memorandum in Opposition to Defendant PNC's Motion to Deny Joinder (ECF No. 25).[1]  For the reasons that follow, it is **RECOMMENDED** that Plaintiffs' Motion to Remand be **DENIED** and PNC's Motion to Deny Joinder be **GRANTED**.

### I.  BACKGROUND

Jack S. Richardson, now deceased, is the Grantor of the Jack S. Richardson Revocable Trust (the "Trust").  (Compl. ⁋ 1, ECF No. 5.)  At all times relevant, PNC or its predecessor National City Bank performed investment and trust advisory services for Mr. Richardson.  (*Id*. at ⁋ 10.)  The Trust was first established on October 6, 2003, naming Jack S. Richardson ("Mr.

---

[1] A duplicate copy was also filed as ECF No. 26.

Richardson) and his wife, Plaintiff Betty L. Richardson ("Mrs. Richardson"), as co-trustees. (*Id*. at ¶ 11.) The Trust was amended and restated on December 3, 2007. (*Id*. at ¶ 16.) On August 30, 2011, Mr. Richardson executed an amendment to the Trust (the "2011 Amendment"). (*Id*. at ¶ 22.) Pursuant to the 2011 Amendment, the following distributions from the Trust would occur upon the death of Mrs. Richardson: one-half of the Trust to Mr. Richardson's daughter, Plaintiff Darcy G. Arnold ("Mrs. Arnold"); one-quarter of the Trust to Mr. Richardson's granddaughter, Plaintiff Ashley N. Pennington; and one-quarter of the Trust to Mr. Richardson's granddaughter Plaintiff Angela M. DeNoble. (*Id*. at ¶¶ 24–25.) The 2011 Amendment further provided that, upon Mrs. Richardson's disability, Mrs. Arnold would serve as trustee, followed by Ms. Pennington and/or Ms. DeNoble. (*Id*. at ¶ 26.) Plaintiffs allege that, by July 2016, Mr. Richardson "lacked sufficient mind and memory" to understand his business, or the nature and extent of his property. (*Id*. at ¶ 29.) Nonetheless, Mr. Richardson executed yet another amendment to the Trust on November 15, 2016 (the "2016 Amendment"). (*Id*. at ¶ 33.) Notably, the 2016 Amendment provided that, upon Mrs. Richardson's death: Mrs. Arnold's Trust interest would be held in a separate discretionary trust, from which the trustee could withhold distributions to Mrs. Arnold; and Misses. Pennington and DeNoble's Trust interests would be held in a separate discretionary trust until they respectively attain age 60. (*Id*. at ¶¶ 36–37.) Further, the 2016 Amendment named PNC, and not Mrs. Arnold, as the successor trustee. (*Id*. at ¶ 39.)

Plaintiffs allege that PNC, by and through its agents, improperly pressured Mr. Richardson to execute the 2016 Amendment. (*See, e.g., id*. at ¶ 31.) Plaintiffs further allege that PNC and its agent, Defendant Kim Mason, breached certain duties owed to Mr. Richardson by failing to disclose possible conflicts of interest and failing to inform Mr. Richardson of his right

2

to independent counsel with respect to Trust matters.  (*Id*. at ¶¶ 63–64.)  Plaintiffs now seek money damages, as well as judgment declaring the 2016 Amendment void and invalid, and an accounting of Trust activity.  (Compl., ECF No. 5.)

The instant action was initially filed in the Delaware County Court of Common Pleas on March 9, 2020.  (PNC's Notice of Removal at Exh. A, ECF No. 1-1, PAGEID# 7.)  The original Complaint identifies Plaintiffs, all citizens of Ohio, as: Darcy G. Arnold, individually and as attorney-in-fact for Betty L. Richardson; Betty L. Richardson, individually and as surviving spouse of Jack S. Richardson; Ashley N. Pennington, individually and on behalf of her minor children; and Angela M. DeNoble, individually and on behalf of her minor children.  (Compl. 1, ECF No. 5.)  The original Complaint names a single defendant: PNC.  (*Id*.)  Finally, the original Complaint includes the following five causes of action against PNC: Declaratory Judgment, Undue Influence, Breach of Fiduciary Duty, Breach of Duty of Good Faith and Fair Dealing, and Accounting.  (Compl., ECF No. 5.)

On April 8, 2020, PNC removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).  (PNC's Notice of Removal, ECF No. 1.)  PNC filed its Answer (ECF No. 2) and Motion to Dismiss Counts 2–4 (ECF No. 3) that same day.

Twenty-one days later, on April 29, 2020, Plaintiffs filed their Amended Complaint. (ECF No. 13.)  The Amended Complaint adds two Plaintiffs: Adam R. Rinehart, Special Administrator of the Estate of Jack S. Richardson; and Jane Doe, the to-be-identified Executor of the Estate of Jack S. Richardson.  (Am. Compl. at 1, ECF No. 13.)  In addition, the Amended Complaint joins Kim Mason, a citizen of Ohio, as a defendant.  (*Id*. at 2.)  Further, the Amended Complaint includes the following *six* causes of action: Declaratory Judgment against PNC; Undue Influence against PNC; Tortious Interference against PNC and Ms. Mason; Breach of

3

Fiduciary Duty against PNC and Ms. Mason: Breach of Contract against PNC; and an Accounting against PNC. (Am. Compl., ECF No. 13.) Although the factual allegations in the Amended Complaint are largely identical to those in the Complaint, Ms. Mason is mentioned by name with increased frequency. (*See, e.g.*, Compl. at ¶ 31–32, ECF No. 5, Am. Compl. at ¶ 34–35, ECF No. 13.)

On May 6, 2020, Plaintiffs filed their Motion to Remand. (ECF No. 18.) On May 27, 2020, PNC filed its Memorandum in Opposition to Plaintiffs' Motion to Remand and Motion to Deny Joinder of Defendant Kim Mason. (ECF No. 24.) Finally, on June 10, 2020, Plaintiffs filed their Reply in Further Support of their Motion to Remand and Memorandum in Opposition to PNC's Motion to Deny Joinder. (ECF No. 25.)

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Id*. (citations omitted). *See also Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."). "The basic statutory provisions that grant federal courts subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for '[f]ederal-question' jurisdiction, and 28 U.S.C. § 1332, which provides for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp*., 546 U.S. 500, 501 (2006).

Generally, a claim filed in state court may be removed to federal court if original jurisdiction would have been present in federal court. 28 U.S.C. § 1441(a). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction

4

[over a case that has been removed to federal court], the case shall be remanded." 28 U.S.C. § 1447(c).

PNC removed this action on the basis of diversity jurisdiction pursuant to § 1332. (*See* ECF No. 1.) For a federal court to have diversity jurisdiction, there must be complete diversity of citizenship, which means that each plaintiff must be a citizen of a different state than each defendant, and the amount in controversy must exceed $75,000. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In their Motion to Remand, Plaintiffs contend that this action must now be remanded to state court because diversity jurisdiction does not exist for the following two reasons: (i) the parties named in Plaintiffs' Amended Complaint are not completely diverse, and (ii) Defendant has not establish that the amount in controversy exceeds $75,000. (Pls.' Mot. to Remand, ECF No. 18.) In response, PNC argues that this Court has and should retain jurisdiction over the case, and that Plaintiffs should not be permitted to join Ms. Mason as a non-diverse defendant in their Amended Complaint. (PNC's Mot. to Deny Joinder, ECF No. 24.) The undersigned will address each of Plaintiffs' contentions, in turn.

### III. COMPLETE DIVERSITY

As noted above, diversity jurisdiction will only lie when there is complete diversity between the parties. *Caterpillar, Inc.*, 519 U.S. at 68. Complete diversity exists when "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Id*. "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In other words, the court has *discretion* to decide whether the action should proceed in federal court without the newly-added non-diverse defendant, or be remanded to proceed with that party. "A district court may base its discretionary determination

5

under § 1447(e) on the following factors: (1) the extent to which the [ ] amendment's intent was to destroy federal jurisdiction, (2) whether the plaintiff was dilatory in filing the [amendment], (3) whether the plaintiff would be significantly injured if the [amendment] were [not allowed], and (4) any other equitable factors." *Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 221 (6th Cir. 2016) (citing *Bailey v. Bayer CropScience, L.P.*, 563 F.3d 302, 309 (8th Cir. 2009); *Mayes v. Rapoport*, 198 F.3d 457, 462–63 (4th Cir. 1999)). *See also Prem. Fin. Grp., LLC v. MPVF LHE Lexington LLC*, No. 5:13-cv-362, 2014 WL 112308, at *3–4 (E.D. Ky. 2014) (noting that it is "irrelevant" for purposes of analysis under § 1447(e) that a plaintiff amended its complaint as a matter of course, rather than by motion seeking leave to amend). "These factors . . . are intended to answer the ultimate question whether the primary purpose of the proposed joinder is to oust the case from the federal forum." *J. Lewis Cooper Co. v. Diageo N. Am., Inc.*, 370 F.Supp.2d 613, 618 (E.D. Mich. 2005). *See also City of Cleveland v. Deutsche Bank Trust Co.*, 571 F.Supp.2d 807, 824 (N.D. Ohio 2008); *Prem. Fin. Grp., LLC*, 2014 WL 1128308 at *4. Courts within the United States Court of Appeals for the Sixth Circuit afford special weight to the first factor, which goes to the heart of the inquiry. *See Cooper v. Thames Healthcare Grp., LLC*, No. Civ. 13-14, 2014 WL 941925, at *2 (E.D. Ky. Mar. 11 2014) (finding the first factor "of paramount importance") (quoting *Prem. Fin. Grp., LLC*, 2014 WL 1128308 at *4). *See also Bounty Minerals, LLC v. Chesapeake Expl., LLC*, No. 5:17-cv-1695, 2019 WL 928135, at *3 (N.D. Ohio Fed. 26, 2019) (same) (citing, among authority, *City of Cleveland*, 571 F.Supp.2d at 824).

Here, the first and third factors weighs in favor of PNC, while the second factor is neutral, and the fourth weighs in Plaintiffs' favor. The undersigned finds that the balance of

factors weighs in favor of PNC's Motion to Deny Joinder of Defendant Kim Mason.  The undersigned will discusses each factor below.

**A.     Whether Plaintiffs Joined Mason for the Purpose of Defeating Federal Jurisdiction**

The first factor in the Court's analysis is the extent to which Plaintiffs' amendments to its Complaint were made for the purpose of defeating federal jurisdiction.  The undersigned finds that Ms. Mason was joined, at least in part, for such improper purpose.  As a result, this factor runs in favor of PNC.

Plaintiffs' Amended Complaint contains a number of changes, as compared to the original Complaint.  (*See* Compl., ECF No. 5; Am. Compl, ECF No. 13.)  Specifically, the Amended Complaint adds two plaintiffs, adds one defendant, adds one claim, reframes another, and revises the way in which demands for money damages are worded.  (*Id.*)  Plaintiffs argue that these changes were necessary and appropriate to address the deficiencies in their Complaint identified in PNC's Motion to Dismiss, and any impact on federal jurisdiction is incidental. (Pls.' Mot. to Remand at 6, ECF No. 18; Pls.' Reply at 1–2, ECF No. 25.)

Plaintiffs' argument is not persuasive.  It is undisputed that Plaintiffs knew Ms. Mason's identity—and her role in the facts alleged—at the time the original Complaint was filed.  (*See* Compl., ECF No. 5.)  Although Plaintiffs may have valid claims against Ms. Mason, they offer no explanation for why she was not named as a defendant in the first instance.  Notably, Plaintiffs filed their Amended Complaint without any discovery having taken place.  (*See* Pls.' Mot. to Remand at 6, ECF No. 18.)  Instead, the Amended Complaint attributes certain acts and intentions to PNC *and* Ms. Mason, which were previously attributed only to PNC.  (*See, e.g.*, Compl. at ¶ 31–32, ECF No. 5, Am. Compl. at ¶ 34–35, ECF No. 13.)  Unsurprisingly, then, the Amended Complaint does not contain any additional factual allegations.  The undersigned further notes that Plaintiffs' Amended Complaint removes specific reference to its expectation

7

that money damages on three claims[3] will each exceed $25,000—which, coincidentally, sum to the precise threshold for establishing diversity jurisdiction—opting instead for a vague reference to an unknown amount. What's more, Plaintiffs filed their Motion to Remand less than one week after filing the Amended Complaint. Taken together, these circumstances make apparent Plaintiffs' intent to defeat federal jurisdiction by way of its Amended Complaint. *See Cooper*, 2014 WL 941925, at *3–4 (citing *Mayes*, 198 F.3d at 463 ("Especially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction.")). *See also Scott Elliot Smith, LPA v. Travelers Cas. Ins. Co. of Am.*, No. 2:12-cv-65, 2012 WL 1758398, at *2 (finding that the plaintiffs intended to destroy federal jurisdiction in part because they knew of the non-diverse defendant's identity and role before filing their original complaint). The first factor, therefore, weighs in favor of PNC.

**B.      Whether Plaintiffs were Dilatory in Joining Mason**

The second factor for consideration is whether Plaintiffs were dilatory in filing their Amended Complaint. This factor is largely neutral.

Plaintiffs argue that they were not dilatory in joining Ms. Mason as a defendant in the action, because their Amended Complaint was filed less than two months after the original

---

[3] Plaintiff's original Complaint alleged that Plaintiffs "suffered damages in excess of $25,000" in each claim two (Undue Influence), three (Breach of Fiduciary Duty), and four (Breach of Duty of Good Faith and Fair Dealing). (Compl. ¶¶ 60, 74, and 80, ECF No. 5.) In response to PNC's Motion to Dismiss, the Amended Complaint does not contain a demand for money damages in its Undue Influence claim. (Am. Compl., ECF No. 13. *See also* PNC's Mot. to Dismiss 5, ECF No. 3.) The Amended Complaint does, however, include a new claim (Tortious Interference) which carries a demand for money damages, and retains such a demand with respect to the Breach of Fiduciary Duty and Breach of Contract claims—but all references to the amount at issue say, simply, "in an amount to be determined at trial." (Am. Compl. ¶¶ 78, 92, and 98, ECF No. 13.)

Complaint was filed in state court and within the 21-day period following PNC's Motion to Dismiss, as permitted by Federal Rule of Civil Procedure 15(a)(1)(B). (Pls.' Mot. to Remand at 6, ECF No. 18; Pls.' Reply at 5, ECF No. 25.) PNC counters, asserting that Plaintiffs could have named Ms. Mason as an original party to the action. (PNC's Mot. to Deny Joinder at 4, ECF No. 24.) Courts have allowed arguments similar to both Plaintiffs' and PNC's to carry the day. *Compare Bridgepointe Condos., Inc. v. Integra Bank Nat. Ass'n*, No. 08-475-C, 2009 WL 700056, at *3 (finding that plaintiffs were not dilatory in seeking amendment "[o]nly four months" after the initial complaint was filed) *with Cooper*, 2014 WL 941925 at *5 ("[W]hile two months is not a lengthy period of time in general, the fact that [plaintiff] had knowledge of the [non-diverse defendant's identity and role] the entire time does not permit this factor to weigh in favor of joinder."). As such, here, the second factor does not weigh in favor of either party.

C. **Whether Plaintiffs will be Significantly Injured if Joinder is Denied**

The third factor is whether Plaintiffs will be significantly injured if joinder of Ms. Mason is not permitted. The undersigned finds that Plaintiffs will not suffer significant injury if Ms. Mason is not a party to this action. The third factor therefore weighs in favor of PNC.

In its Motion to Deny Joinder, PNC correctly points out that courts have consistently found, "when an employer will ultimately be liable for the actions of an employee, then denial of a plaintiff's joinder of that employee does not result in injury to the Plaintiff." (PNC's Mot. to Deny Joinder at 7–8, ECF No. 24 (citing *Wells v. Certainteed Corp.*, 950 F.Supp. 200, 201, (E.D. Mich. 1997); *Lawson v. Lowe's Home Ctrs., LLC*, No. 5:13-374-KKC, 2015 WL 65117, at *4 (E.D. Ky. Jan. 5, 2015)). Under *respondeat superior*, the doctrine whereby an employer is liable for its employee's tortious acts performed in the course and scope of their employment, a plaintiff is able to fully recover by bringing suit against the employer, without joining the employee. *See O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009). Here, Plaintiffs'

9

Amended Complaint describes Ms. Mason as an "agent" of PNC and acknowledges that she worked for PNC. (*See* Am. Compl. ¶¶ 11 and 55, ECF No. 13.) The Amended Complaint does not allege any wrongdoing by Ms. Mason alone, nor does it bring any claims against Ms. Mason alone. Similarly, Plaintiffs do not allege that Ms. Mason was acting outside the course and scope of her employment with PNC.[4] PNC has acknowledged "its liability for actions taken by Ms. Mason arising out of the scope of her employment, and Plaintiffs will therefore be able to obtain complete relief without her presence in this action." (PNC's Mot. to Deny Joinder 8, ECF No. 24.) Accordingly, it is unlikely that Plaintiffs will suffer significant injury if they are not able to join Ms. Mason as a party. The third factor therefore weighs in favor of PNC.

Plaintiffs' arguments for a contrary result are unavailing. First, Plaintiffs argue that denying joinder of Ms. Mason would deprive them of their rights under the Federal Rules of Civil Procedure to amend their pleadings as a matter of course, and to refine their pleadings in response to a motion to dismiss. (Pls.' Mot to Remand at 7, ECF No. 18; Pls.' Reply at 7, ECF No. 25.) Section 1447(e) of Title 28 of the United States Code gives district courts the discretion to deny joinder of non-diverse parties after removal from state court. Plaintiffs cite no authority, nor can the undersigned find any, supporting the proposition that the Court's discretion is subject to, or subjugated by, a plaintiff's right to amend its pleadings under the Federal Rules of Civil Procedure. Plaintiffs further argue that denial would "force Plaintiffs to litigate substantially similar claims in multiple venues"—in essence, promising that Ms. Mason will be sued

---

[4] Plaintiffs imply that, because Ms. Mason allegedly breached duties owed by attorneys to their clients, she necessarily acted outside the course and scope of her employment, because she was not employed by PNC as an attorney. (Pls.' Reply at 6, ECF No. 25.) However, in order for those duties to attach, an attorney-client relationship must exist. *See Svaldi v. Holmes*, 986 N.E.2d 443, 447 (Ohio Ct. App. 10th Dist. 2012). The Amended Complaint does not allege, indicate, or otherwise imply that Ms. Mason was engaged *as an attorney* for or on behalf of any party involved. This argument therefore fails.

separately if she is not joined in this action. (*Id.*) However, Plaintiffs' "fear of unnecessary multiple litigation[] could easily have been avoided by naming all the defendants in [the] original state court complaint." *Bounty Minerals, LLC*, 2019 WL 928135 at *3 (quoting *McGee v. State Farm Mut. Auto. Ins. Co.*, 684 F.Supp.2d 258, 264 (E.D. N.Y. 2009)) (internal quotation marks omitted).

### D. Other Factors Bearing on the Equities

The fourth factor is a general provision, under which the Court may review other factors bearing on the equities of the matter. Many courts evaluate the defendant's interest in a federal forum under this fourth factor. *Cooper*, 2014 WL 941925 at *5. This factor weighs in favor of Plaintiffs. Courts widely recognize a diverse defendant's interest in a federal forum. However, PNC filed a related lawsuit against the Plaintiffs named in the original Complaint, in state court, less than one year before PNC removed the instant action to federal court. (Pls.' Mot. to Remand 5, ECF No. 18.) This filing undermines PNC's reliance upon its interest in a federal forum. *See Bridgepointe Condos., Inc.*, 2009 WL 700056 at *4 (finding that the defendant did not have a significant interest in a federal forum because it chose state court as the forum for a related action).

### IV. AMOUNT IN CONTROVERSY

Plaintiffs further argue that, regardless of whether Ms. Mason is joined as a party, remand is necessary because the amount in controversy requirement of § 1332(a) has not been met. (Pls' Mot. to Remand 7, ECF No. 18; Pls.' Reply 8, ECF No. 25.) The undersigned disagrees.

"If removal of a civil action is sought on the basis of [diversity jurisdiction], the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ." 28 U.S.C. § 1446(c)(2). However, "the notice of removal may assert the amount in controversy if the initial pleading seeks . . . a money judgment, but the State practice either does

11

not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded . . . ." 28 U.S.C. § 1446(c)(2)(A)(ii). Ohio has such a practice. *See* Ohio Rule of Civil Procedure 8(A).

"In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). *See also Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 573 (6th Cir. 2001) ("[W]hen determining whether [defendant] has met its burden of showing, by a preponderance, that more than $75,000 is in controversy, we review the damages sought by [p]laintiffs at the time of removal—i.e., the damages sought by [p]laintiffs in their original complaint."). "A court must conduct a fair reading of the allegations in the complaint to determine the amount in controversy." *Shupe v Asplundh Tree Expert Co.*, 566 F. App'x 476, 478 (6th Cir. 2014) (internal quotation marks and citations omitted). But, when allegations of jurisdictional facts are challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 573 U.S. 81, 88 (2014); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof."). This Court must, therefore, consider the allegations and claims asserted in the original Complaint together with the parties' evidentiary submissions. *Dart Cherokee*, 574 U.S. 88–89. "The burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it." *Hertz Corp.*, 559 U.S. at 96 (citations omitted).

The undersigned finds PNC has satisfied its burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. In their original Complaint,

12

Plaintiffs seek both declaratory judgment and money damages. (Compl. at ¶¶ 48, 60, 74, and 80, ECF No. 5.) The Sixth Circuit has held that "where a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (internal quotations omitted). PNC asserts in its Notice of Removal that the "difference between an immediate distribution of the [T]rust funds . . . versus keeping the funds in the [T]rust as the 2016 [A]mendment pr[e]scribes equates to more than $1,000,000 in damages."[5] (Notice of Removal at ¶ 11, ECF No. 1.) PNC supports its assertion by noting that the market value of the Trust as of March 16, 2020, was $2,209,737. (*Id. See also* Notice of Removal at Exh. B, ECF No. 1 at PAGEID# 99.) Plaintiffs counter that, because they are entitled to the Trust funds sooner or later, the value of declaratory judgment is really the "benefit that can be derived from having the funds more immediately available."[6] (Pls.' Mot. to Remand at 8, ECF No. 18.) Although the undersigned does not disagree with the methodology Plaintiffs endorse (*see Freeland*, 632 F.3d at 253 (describing "the monetary consequences that would result from a victory for [plaintiffs]" as the difference between the insurance coverage claimed and the coverage amount not in dispute)), Plaintiffs have not provided the Court with any evidence that the value of such benefit falls below the jurisdictional threshold, nor do they stipulate as much.

---

[5] Although PNC represents that Plaintiffs seek "an immediate distribution of the trust funds," the undersigned notes that the 2011 Amendment (which would control in the event of declaratory judgment in favor of Plaintiffs) does not provide for a distribution of such funds until Mrs. Richardson's death.

[6] In other words, the present value, as of the date of Mrs. Richardson's death, of the amounts that would be later-distributed pursuant to the terms of the 2016 Amendment.

Plaintiffs also assert claims seeking money damages. Plaintiffs' original Complaint alleges money damages "in excess of $25,000, to be determined at trial" with respect to three causes of action (including Undue Influence, Breach of Fiduciary Duty, and Breach of Duty of Good Faith and Fair Dealing). Although damages claims may be aggregated to establish the amount in controversy (*see Lemmon v. Cedar Point, Inc.*, 406 F.2d 94, 96 (6th Cir.1969)), damages that cannot by law be awarded are not included (*see Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011)). As PNC points out in its Motion to Dismiss, Ohio law does not allow Plaintiffs to recover money damages for a claim of undue influence. (*See* PNC's Mot. to Dismiss 5, ECF No. 3.) *See also Kingston Nat. Bank v. Stulley*, No. 443, 1990 WL 155741, at *9 (Ohio Ct. App. Sept. 28, 1990). Nonetheless, the minimum plausible money damages alleged in the original Complaint is in excess of $50,000. Taking this sum together with the value of the declaratory judgment, described above, the undersigned is persuaded that it is more likely than not that the amount in controversy exceeds $75,000.

## V. CONCLUSION

In conclusion, the undersigned finds that the balance of factors weighs in favor of PNC's Motion to Deny Joinder of Defendant Kim Mason. It is **RECOMMENDED** that Plaintiffs' Motion to Remand be **DENIED** and PNC's Motion to Deny Joinder of Defendant Kim Mason be **GRANTED**. The undersigned further finds that PNC has satisfied its burden with respect to the amount in controversy. It is therefore appropriate for this Court to retain jurisdiction over this case.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE