UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DARCY G. ARNOLD, *et al.*,

        Plaintiffs,

v.

PNC BANK, N.A.,

        Defendant.

Civil Action 2:20-cv-1804
Chief Judge Algenon L. Marbley
Magistrate Judge Chelsey M. Vascura

## OPINION & ORDER

This case is before the Court on the Magistrate Judge's March 25, 2022 Order denying Plaintiff's Oral Motion to Compel production of unredacted documents (ECF No. 72), Plaintiffs' Objections thereto (ECF No. 73), and Defendant's Response to Plaintiffs' Objections (ECF No. 74). For the following reasons, the Court **OVERRULES** Plaintiffs' Objections and **ADOPTS** the Magistrate Judge's March 25, 2022 Order. (ECF Nos. 72, 73).

This matter is further before the Court on Plaintiffs' Motion to Modify the Case Schedule (ECF No. 75), Defendant's Opposition thereto (ECF No. 79), and Plaintiffs' Reply (ECF No. 82), as well as Defendant's Motion for Leave to File its Answer *Instanter* to Plaintiffs' Second Amended Complaint (ECF No. 77), Plaintiffs' Opposition thereto (ECF No. 80), and Defendant's Reply (ECF No. 81). For the reasons that follow, Plaintiffs' Motion to Modify the Case Schedule is **DENIED,** and Defendant's Motion for Leave to file its Answer *Instanter* is **GRANTED**.

## I. BACKGROUND

Jack S. Richardson, now deceased, is the Grantor of the Jack S. Richardson Revocable Trust (the "Trust"), originally established in 2003. Mr. Richardson amended the Trust several times, most recently in 2016 (the "2016 Amendment"). Plaintiffs, beneficiaries of the Trust, challenge the 2016 Amendment as the product of undue influence by Defendant PNC Bank, N.A., Mr. Richardson's trust advisor. Plaintiffs contend that the 2016 Amendment benefits PNC to the detriment of the Trust beneficiaries by, *inter alia*, naming PNC (rather than Mr. Richardson's daughter, Darcy Arnold) as the trustee upon Mr. Richardson's death and maintaining a larger portion of the Trust principal under PNC's control for longer periods of time.

Following removal of this case to this Court from the Court of Common Pleas for Delaware County, Ohio, the Court entered a Preliminary Pretrial Order on April 20, 2020 establishing, *inter alia*, a discovery deadline of December 31, 2020, and a dispositive motions deadline of January 29, 2021. (ECF No. 11.) Since that time, the parties have both amended their pleadings with leave of Court to add new claims (*see* ECF Nos. 55–56), and the case schedule has been extended *six* times (*see* ECF Nos. 34, 36, 39, 42, 52, 60, 65, 69).[1] Most recently, the discovery deadline was extended to May 5, 2022 (such that the discovery period has spanned over two years), and the dispositive motions deadline was extended to June 2, 2022. (ECF No. 69.)

---

[1] In its opposition to Plaintiffs' Motion, PNC emphasizes that one of the earlier orders extending the case schedule warned that "no further extension of the case schedule will be granted absent a true emergency." (ECF No. 42.) However, this warning was issued prior to the Court's decision to permit both parties to add new claims arising out of events that transpired since the original filing of the Complaint, and the Court has permitted amendment of the case schedule an additional four times without a showing of true emergency. Thus, the absence of a true emergency supporting Plaintiffs' Motion is not dispositive.

2

On March 11, 2022, the Court granted Plaintiffs' motion for their current counsel to withdraw and for new counsel to enter their appearance of record for Plaintiffs. (ECF No. 67.) Shortly after entering their appearance, Plaintiffs' new counsel raised a discovery dispute relating to a June 8, 2016 email that had previously been produced by PNC in discovery. The June 8 email was sent by PNC Wealth Strategist Doug Hicks to other PNC employees stating,

> Attached are most of the plans for your $3 [million] + clients. I'll also send you a list of recommendations to go over for each client. Based on the ages of some of your clients, my biggest concern is where is the money going when they die and what are we doing now to retain it.

(June 8 Email, ECF No. 73-1.) The June 8 Email also contains a list of PNC's trust clients with trust assets worth $3 million or more, but PNC redacted the names of all clients other than Mr. Richardson prior to production. (*Id.*) Plaintiff seeks production of the June 8 Email in unredacted form, as well as ten Excel spreadsheets comprising logs of PNC's interactions with the clients whose names were redacted.

Following a telephone conference with the parties on March 25, 2022, the Magistrate Judge issued an Order denying Plaintiff's oral motion to compel production of the unredacted June 8 Email and the associated spreadsheets. (Order, ECF No. 72.) The Magistrate Judge reasoned that "[i]nformation concerning unrelated PNC clients would be of, at best, tangential relevance to whether undue pressure was also exerted in this case. Further, this information would be relevant only if Plaintiffs establish that undue pressure was exerted over those clients, which would require the Court to conduct numerous mini-trials." (*Id.* at 1.) Thus, the Magistrate Judge held that compelling production of the requested documents would not be proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1). (*Id.*) Plaintiffs filed their Objections on April 8, 2022 (ECF No. 73), and PNC filed a response on April 21, 2022 (ECF No. 74).

On May 5, 2022, the discovery deadline, Plaintiffs filed the subject Motion to Modify the Case Schedule, asserting that they require an additional 60 days to complete discovery (and a corresponding additional 60 days to prepare dispositive motions) due to several outstanding discovery disputes. (ECF No. 75.) PNC opposes, contending that Plaintiffs have not been diligent in seeking amendment of the case schedule, that most of the discovery disputes raised by Plaintiffs in their Motion have already been resolved, and that PNC would be prejudiced by extending the case schedule on the eve of dispositive motions. (ECF No. 79.) On reply, Plaintiffs appear to concede that many of the alleged deficiencies in PNC's discovery efforts are moot, and they now argue that only two issues require extension of the discovery period: PNC's allegedly deficient privilege log (served October 16, 2021), and the allegedly deficient testimony of PNC's corporate representative at PNC's Rule 30(b)(6) deposition (which took place on November 23, 2021). (ECF No. 82.) Plaintiffs raised the latter of these issues for the first time in their Reply brief. (*Id.*)

Meanwhile, PNC filed a Motion for Motion for Leave to File its Answer *Instanter* to Plaintiffs' Second Amended Complaint on May 11, 2022 (ECF No. 77). PNC asserts that it inadvertently failed to file its Answer to Plaintiffs' Second Amended Complaint, which was due on November 19, 2022 (fourteen days after Plaintiffs filed their Second Amended Complaint, ECF No. 56, on November 5, 2022, in accordance with Federal Rule of Civil Procedure 15(a)(3)). Although PNC offers no justification for its failure to timely file its Answer other than inadvertence, PNC contends that the overdue filing will not prejudice Plaintiffs because the proposed Answer contains no new affirmative defenses or factual allegations inconsistent with information disclosed in discovery. (ECF No. 77.) Plaintiffs oppose, asserting that that PNC's nearly six-month delay is not the result of excusable neglect as required by Federal Rule of Civil

Procedure 6(b). (ECF No. 80.) In particular, Plaintiffs contend that PNC's failure to timely file its Answer by November 19, 2022, meant that Plaintiffs were precluded from effectively conducting their Rule 30(b)(6) deposition of PNC's representative on November 23, 2022. (ECF No. 80.) On reply, PNC points out that Plaintiffs also had six months to raise PNC's failure to file its Answer if Plaintiffs felt they had been prejudiced. (ECF No. 81.) PNC also represents that, when soliciting Plaintiffs' consent to file its Answer out of rule, PNC offered to not object to Plaintiffs' conducting any discovery related to anything raised in PNC's Answer, which offer Plaintiffs have ignored. (*Id.*)

## II. PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S MARCH 25, 2022 ORDER

### A. Standard of Review

Under Federal Rule of Civil Procedure 72(a), district judges reviewing magistrate judges' orders on non-dispositive matters "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Rule 72(a) provides "considerable deference to the determinations of magistrates." *Siegler v. City of Columbus*, 2:12-CV-472, 2014 WL 1096159, at *1 (S.D. Ohio Mar. 19, 2014) (quoting *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995)). This Court has noted that "[w]hile Rule 72(a) does not use the phrase 'abuse of discretion,' the standard applied under this rule for a nondispositive motion parallels the standard outlined in *Getsy* for appellate review of discovery orders." *Nathan v. Ohio State Univ.*, 2:10-CV-872, 2013 WL 139874, at *2 (S.D. Ohio Jan. 10, 2013) (citing *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) (en banc) ("[A] district court abuses its discretion where it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact.")).

5

The "clearly erroneous" standard applies to factual findings by the magistrate judge, while legal conclusions are reviewed under the "contrary to law" standard. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994); *see also Siegler*, 2014 WL 1096159, at *1-2 (S.D. Ohio Mar. 19, 2014). A factual finding is "'clearly erroneous' only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Siegler*, 2014 WL 1096159, at *1 (citing *Heights Cmty. Cong. v. Hilltop v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)). A district court's review of legal conclusions under the "contrary to law" standard "may overturn any conclusions of law which contradict or ignore applicable precepts of law." *Gandee*, 785 F. Supp. at 686; *see also Peters v. Credits Prot. Ass'n LP*, 2:13-CV-0767, 2015 WL 1022031, at *3 (S.D. Ohio Feb. 19, 2015).

**B.    Analysis**

Federal Rule of Civil Procedure 26 sets forth the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). However, revisions to the Federal Rules of Civil Procedure in 2015 "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26, Advisory Committee Notes to the 2015 Amendment. "The proportionality standard is the instrument by which judges and practitioners are to bring about a change in the culture of

6

discovery, requiring lawyers, with the guidance of involved judges, to 'size and shape their discovery requests to the requisites of a case.'" *Waters v. Drake*, 222 F. Supp. 3d 582, 605 (S.D. Ohio 2016) (quoting Chief Justice Roberts, 2015 Year-End Report on the Federal Judiciary at 7).

Here, the Court agrees with the Magistrate Judge that information concerning PNC clients unrelated to this case "would be of, at best, tangential relevance" as to whether PNC exerted undue influence over Mr. Richardson in this case. Even assuming Plaintiff could prove that PNC unduly influenced one or more of its other clients, that would not establish that PNC unduly influenced Mr. Richardson. The elements of an undue influence claim require Plaintiffs to establish "(1) a susceptible grantor; (2) another's opportunity to exert undue influence; (3) the fact of improper influence exerted or attempted; and (4) the result showing the effect of such influence." (Pl.'s Obj. 8, ECF No. 73) (citing *Redman v. Watch Tower Bible & Tract. Soc'y*, 69 Ohio St. 3d 98, 101, 1994-Ohio-514, 63 N.E.2d 676, 678–79). None of these elements can be established via evidence of PNC's interactions with its other clients. Even if Plaintiffs were able to prove that PNC unduly influenced its other clients, Plaintiffs would still have to prove that PNC unduly influenced Mr. Richardson in particular.

Moreover, as the Magistrate Judge pointed out, proof that PNC unduly influenced its other clients could be obtained only through numerous mini-trials. Plaintiffs contend that mini-trials would not be necessary because "[a] review of the Richardson PNC Bank log reflects that PNC Bank employees kept detailed notes and that most, if not all, of that information can be conveniently pulled from those logs." (Pl.'s Obj. 9, ECF No. 73.) Plaintiffs also represent that they have no intention of contacting PNC's other clients or calling them as witnesses. (*Id.* at 10.) However, PNC points out that *PNC* would need to call its other clients as witnesses to effectively defend against Plaintiffs' allegations that PNC's other clients were unduly influenced. (PNC's

7

Resp. 8–9, ECF No. 74.) Thus, allowing Plaintiffs to obtain discovery related to PNC's other clients would result in lengthy judicial proceedings that are not proportional to the needs of this case. The requested documents therefore fall outside the scope of permissible discovery.[2] Accordingly, the Court therefore **OVERRULES** Plaintiffs' Objections and **AFFIRMS** the Magistrate Judge's March 25, 2022 Order. Plaintiffs remain free, however, to question PNC witnesses at trial regarding the contents of the June 8 Email and PNC's general practices regarding its trust clients.

### III.   PLAINTIFFS' MOTION TO MODIFY THE CASE SCHEDULE

Plaintiffs seek to extend the discovery and dispositive motions deadlines by 60 days in order to resolve two outstanding discovery disputes. As explained below, Plaintiffs have not shown good cause to modify the case schedule.

### A.   Standards Governing Case Schedule Amendments

A district court is required to enter a scheduling order, which limits the time "to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). When, as in the instant case, a party misses a scheduling order's deadlines and seeks a modification of those deadlines, the party must first demonstrate good cause. *See* Fed. R. Civ. P. 16(b)(4); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted); *accord Leary v. Daeschner,* 349 F.3d 888, 906

---

[2] Plaintiffs also argue that the documents they seek would be admissible at trial under Federal Rules of Evidence 404 and 406 and that PNC's confidentiality concerns could be addressed through the use of pseudonyms or a protective order. (Pl.'s Obj. 8–11.) Because the Court finds the requested documents to be outside the scope of permissible discovery as irrelevant and not proportional to the needs of the case, the Court need not address these additional arguments.

(6th Cir. 2003) ("[A] court choosing to modify the schedule upon a showing of good cause, may do so only if it cannot reasonably be met despite the diligence of the party seeking the extension." (quotation omitted)). "Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citing *Inge*, 281 F.3d at 625).

**B.     Analysis**

Plaintiffs have not demonstrated good cause to modify the case schedule. The two discovery disputes on which Plaintiffs rely for an extension of the discovery period both arose more than five months prior to Plaintiffs' Motion, and Plaintiffs fail to offer any explanation as to why they could not, with the exercise of reasonable diligence, have raised these issues sooner such that they could be resolved within the existing discovery period.[3] Instead, Plaintiffs first raised potential deficiencies with PNC's privilege log one week prior to the close of discovery (over six months after the privilege log was served), and when resolution could not be accomplished within a few days, Plaintiffs filed their Motion to modify the case schedule on the day discovery closed. (*See* Apr. 27, 2022 Email, ECF No. 79-1; Pls.' Mot., ECF No. 75.) As to the alleged deficiencies with PNC's Rule 30(b)(6) deposition testimony, Plaintiffs waited until their Reply brief (filed more than six months after the deposition took place) to suggest that additional time for discovery was needed to address this dispute. (*See* ECF No. 82.) And although Plaintiffs' current counsel argue that they have been diligent since they took over Plaintiffs' representation in March 2022, Plaintiffs' retention of new counsel does not excuse Plaintiffs' lack of diligence. "[T]he substitution of new counsel does not justify failure to comply

---

[3] Much of the parties' briefing is devoted to the substance of the discovery disputes on which Plaintiffs rely for the need to extend the discovery period. However, the substance of those disputes is not currently before the Court.

9

with a scheduling order." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014); *accord Thomas v. McDowell*, No. 2:10-CV-0152, 2012 WL 5601198, at *2 (S.D. Ohio Nov. 15, 2012) ("Defendants' desire to change their litigation strategy, perhaps attributable to their new counsel, . . . does not set forth good cause under Rule 16."); *Waters v. Johnson & Johnson Co.*, No. 2:09-CV-00473, 2011 WL 798092, at *3 (S.D. Ohio Feb. 28, 2011) ("Plaintiff's belated retention of additional counsel does not open the door for a new case schedule."). As a result, Plaintiffs have not shown that they could not reasonably meet the case schedule deadlines despite exercising diligence. *See also Equal Emp. Opportunity Comm'n v. Tepro, Inc.*, No. 4:12-CV-75-HSM-SKL, 2014 WL 12562856, at *3 (E.D. Tenn. Aug. 29, 2014) ("Absent a showing of exceptional circumstances or good cause, motions filed during the last few days of a discovery period are not timely as they cannot be briefed and considered without, in effect, extending the discovery period.").

Further, PNC would undoubtedly be prejudiced if the case schedule were extended at this time, given Plaintiffs' Motion was filed on the day discovery closed and less than a month prior to the dispositive motions deadline. *See, e.g., Leary*, 349 F.3d at 892 ("Defendant would suffer prejudice by allowing this amendment which would require the reopening of discovery at this late stage of the proceedings."); *Sterling Jewelers Inc. v. Alex & Ani, LLC*, No. 5:17-CV-2540, 2019 WL 95842, at *3 (N.D. Ohio Jan. 3, 2019) ("Given that the periods for non-expert and expert discovery have expired, and the January 15, 2019 dispositive motion deadline is fast approaching, any extension of the discovery periods would have the cascading effect of jeopardizing the Court's remaining dates and deadlines."). PNC has, in fact, already filed a motion for summary judgment in accordance with the existing case schedule. (ECF No. 93.) Extending the discovery period could very well result in PNC having to rework its timely-filed

summary judgment motion. This prejudice to PNC also weighs against extending the case schedule. Accordingly, Plaintiffs' Motion to Modify the Case Schedule is **DENIED**.

### IV. PNC'S MOTION FOR LEAVE TO FILE ITS ANSWER *INSTANTER*

PNC seeks leave to file its Answer to Plaintiffs' Second Amended Complaint nearly six months after its deadline to do so. As explained below, PNC has shown that its failure to timely file its Answer is the result of excusable neglect such that it should be permitted to file its Answer to Plaintiffs' Second Amended Complaint.

#### A. Standards Governing Untimely Pleadings

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "The determination of excusable neglect is 'an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266–67 (6th Cir. 2009) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship,* 507 U.S. 380, 395 (1993)). Further, "'excusable neglect' under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392 (cleaned up). In *Pioneer*, the United States Supreme Court set out five factors for courts to consider in determining the existence of excusable neglect:

(1) the danger of prejudice to the nonmoving party,

(2) the length of the delay and its potential impact on judicial proceedings,

(3) the reason for the delay,

(4) whether the delay was within the reasonable control of the moving party, and

(5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 523 (6th Cir. 2006) (citing *Pioneer,* 507 U.S. at 395). The *Pioneer* court ultimately determined that "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh[ed] strongly in favor" of permitting the late filing. 507 U.S. at 398.

**B.     Analysis**

Considering the five *Pioneer* factors, the Court determines that PNC has demonstrated excusable neglect such that it should be permitted to file its Answer to Plaintiffs' Second Amended Complaint. First, the Court can discern little, if any, prejudice that would befall Plaintiffs as a result of filing the Answer, as it contains no new affirmative defenses or factual allegations. The proposed Answer is substantively unchanged from PNC's Answer to Plaintiffs' First Amended Complaint, except that PNC also denies the allegations in Plaintiffs' new claims for breach of trust. Denial of those allegations is entirely consistent with PNC's litigation of the case thus far and should come as no surprise to Plaintiffs. Further, Plaintiffs' contention that PNC's failure to file its Answer prior to PNC's Rule 30(b)(6) deposition precluded Plaintiffs from fully questioning PNC's corporate representative is not well-taken. Plaintiffs have not identified any additional questions they would have asked or questions that would have been answered differently had the Answer been timely filed. Indeed, it appears Plaintiffs did not realize PNC failed to file its Answer until PNC solicited Plaintiffs' consent to file the Answer out of rule in May 2022. In short, it does not appear that the timing of the Answer has impacted or will impact the litigation in any way. *See Bushtec Prod. Corp. v. Komfort Kruz, LLC*, No. 2:15-CV-622, 2016 WL 931264, at *4 (S.D. Ohio Mar. 11, 2016) (finding "little danger of prejudice" because the late-filed answer "would not introduce a novel path for the case to go down").

Second, the length of delay—nearly six months—is significant; however, as explained above, its potential impact on judicial proceedings is negligible. *See id.* ("[T]he length of delay

. . . would not largely change claims or defenses in the case, it would not greatly impact discovery, nor would it moot extensively briefed dispositive motions. This factor weighs in favor of finding excusable neglect.").

The third and fourth factors weigh against finding excusable neglect because PNC offers no explanation for the delay other than its counsel's inadvertence, which is within PNC's control.

But as to the fifth factor, there is no indication that PNC acted in anything other than good faith by seeking leave to file its Answer immediately upon realizing its omission. Indeed, PNC has actively defended the litigation and pursued its own counterclaims, such that, even if PNC were not permitted to file its Answer, entry of default would nevertheless be inappropriate because PNC has not "failed . . . to otherwise defend" under Federal Rule of Civil Procedure 55(a).

In sum, after balancing the *Pioneer* factors, the Court concludes that PNC's failure to timely file its Answer was due to excusable neglect. *See Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 428–30 (6th Cir. 2006) (affirming a district court's decision to accept the defendants' eight-month-late answer, which was tendered after the close of discovery and after summary judgment motions were filed, because there was no prejudice to the plaintiff, no evidence of bad faith by the defendants, and the defendants "almost certainly" would have been entitled to have any default judgment set aside if the court had not accepted their late answer); *Mann v. Mohr*, 802 F. App'x 871, 877 (6th Cir. 2020) (affirming a district court's decision to accept the defendants' seven-week-late answer for the same reasons). PNC's Motion for Leave to File its Answer *Instanter* is therefore **GRANTED**.

V. CONCLUSION

Having reviewed Plaintiffs' Objections and Defendant's Response, this Court finds that the Magistrate Judge's March 25, 2022 Order was neither clearly erroneous nor contrary to law.

13

For these reasons, this Court **OVERRULES** Plaintiffs' Objections (ECF No. 73) and **AFFIRMS** the Magistrate Judge's ruling (ECF No. 72). Further, for the foregoing reasons, Plaintiffs' Motion to Modify the Case Schedule (ECF No. 75) is **DENIED,** and PNC's Motion for Leave to File its Answer *Instanter* (ECF No. 77) is **GRANTED**. The Clerk is **DIRECTED** to file PNC's proposed Answer (ECF No. 78) on the docket.

    **IT IS SO ORDERED.**

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

DATED: June 27, 2022